IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 00-6171-CIV HUCK/Brown

JOSE J. DELACRUZ,

        Plaintiff,

v.

THE HONORABLE ELAINE L. CHAO,
SECRETARY OF LABOR,

        Defendant.
_____/

## DEFENDANT'S PROPOSED FINDINGS OF FACT

COMES NOW the Defendant, by and through the undersigned Assistant United States Attorney, pursuant to the Court's order to file this Proposed Findings Of Fact as follow:

1. In August 1992, the United States Department of Labor (DOL), Bureau of Labor Statisics (BLS) had four Field Economist vacancies and was willing to fill them with new Career-Conditional employees hired at either the GS-5 or GS-7 Level.[1] Three applicants were hired at the

---

[1] The wages and fringe benefits of the overwhelming majority of Executive Branch employees are fixed by law, in accordance with the General Schedules of the Civil Service Act, see 5 U.S.C. §5332 . . . . **Fort Stewart Schools v. Federal Labor Relations Authority**, 495 U.S. 641, 649, 100 S.Ct. 2043, 2048, 109 L.Ed.2d 659 (1990)

In pertinent part, 5 U.S.C. §5104, governing the basis for grading positions provides as follows:

The General Schedule, the symbol for which is "GS", is the basic pay schedule for positions to which this chapter applies. The General Schedule is divided into grades of difficulty and responsibility of work, as follows:

    . . . .

(5)     Grade GS-5 includes those classes of positions the duties of which are–
(A)     to perform, under general supervision, difficult and responsible work in office, business, or fiscal administration, or comparable subordinate technical work in a professional, scientific, or technical field, requiring in either case–



GS-7 Level: a) Reginald Harris, a White male who held a Masters Degree in Economics and, based upon his possession of superior academic qualifications, qualified with the DOL Examination Unit for a GS-7 Level; b) Phyllis Whitesell, a White female with a Bachelor of Science Degree in Economics and again, based upon her possession of superior academic qualifications, qualified with the DOL Examination Unit for a GS-7 Level; c) Robert Craig Walters, a White male who held a Bachelor of Arts Degree in Economics and again, based upon his possession of superior academic qualifications, qualified with the DOL Examination Unit for a GS-7 Level. One applicant was hired at the GS-5 Level: Jose J. Delacruz, an Asian American of Philippine origin and brown skin who

---

        (i)    considerable training and supervisory or other experience;
        (ii)   broad working knowledge of a special subject matter or of office, laboratory, engineering, scientific, or other procedure and practice; and
        (iii)  the exercise of independent judgment in a limited field;
(B)    to perform, under immediate supervision, and with little opportunity for the exercise of independent judgment, simple and elementary work requiring professional, scientific, or technical training; or
(C)    to perform other work of equal importance, difficulty, and responsibility, and requiring comparable qualifications.

(5)    Grade GS-7 includes those classes of positions the duties of which are–
(A)    to perform, under general supervision, work of considerable difficulty and responsibility along special technical or supervisory lines in offices, businesses, or fiscal administration, or comparable subordinate technical work in a professional, scientific, or technical field, requiring in either case–
        (i)    considerable specialized or supervisory training and experience;
        (ii)   comprehensive working knowledge of a special and complex subject matter, procedure, or practice, or of the principles of the profession, art, or science involved; and
        (iii)  to a considerable extent the exercise of independent judgment;
(B)    under immediate or general supervision, to perform somewhat difficult work requiring--
        (i)    professional, scientific, or technical training; and
        (ii)   to a limited extent, the exercise of independent technical judgment; or
(C)    to perform other work of equal importance, difficulty, and responsibility, and requiring comparable qualifications.

held a Bachelor of Arts Degree in Economics, but who did not possess superior academic qualifications, qualified with the DOL Examination Unit only for a GS-5 Level. Accordingly, in his hiring Plaintiff Delacruz did not suffer disparate treatment based upon his color.

2. Effective October 4, 1992, under 5 C.F.R. §315.201, Delacruz was appointed by BLS as a Career-Conditional employee and was therefore subject to the first year probationary period provided for under 5 C.F.R. §315.801. Thereafter, in accordance with under 5 C.F.R. §315.803, BLS used the probationary period to determine whether the fitness of Delacruz to demonstrate fully his qualifications for continued employment. As a new employee, Delacruz was given two weeks of initial classroom training. Thereafter, Delacruz, like all other new Field Economists, was given the opportunity to work with experienced Field Economists to facilitate his training and experience. This on-the-job training is the common and ordinary method used by BLS to train new Field Economists because it allows them witness how experienced Field Economists perform the job. In the presence of experienced employees, the new employee is given the opportunity to perform job functions. The experienced worker, sometimes referred to as a "mentor," provides oversight and feedback to the new employee allowing him/her to develop data collection skills and other job abilities.

3. Typically, the time period required for mentor training and oversight can vary from a few weeks to a few months, depending upon the skill and ability of the individual new Field Economist. During his entire eleven months as a Field Economist for BLS, Delacruz was never graduated from his status as a trainee.

4. After approximately nine months working under several different seasoned mentors, Delacruz was assigned to work under James Beddingfield, a Supervisory Economist (Branch Chief)

for BLS. Delacruz was also given additional classroom instruction. However, during the time that Delacruz was working with Beddingfield, Delacruz was never able to independently and satisfactorily conduct an interview. Beddingfield personally observed Delacruz conduct interviews with at least two separate companies. According to Beddingfield, Delacruz was not able to satisfactorily conduct the interviews.

5. After reviewing the work performance of Delacruz with several of his mentors, coupled with his own observations, Beddingfield concluded that Delacruz was unable to demonstrate proficiency in his job assignments Accordingly, Beddingfield concluded that BLS would be better served by terminating the employment of Delacruz before the end of his probationary period, his first year of employment. In accordance with under 5 C.F.R. §315.804, in a letter addressed to Delacruz dated September 22, 1993, Beddingfield set forth the reasons for this action. In essence, Beddingfield states that despite having received more formal classroom training and on-the-job training than is normally associated with the job, Delacruz had not developed the skills necessary to perform the job. Accordingly, in his termination, Plaintiff Delacruz did not suffer wrongful discrimination based upon his color.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By _____
CHARLES S. WHITE
Assistant United States Attorney
Fla. Bar No. 394981
99 N.E. 4th Street, Suit 300
Miami, Florida 33131
Tel. (305) 961-9286
Fax. (305) 530-7139

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished by U.S. Mail on April 20, 2001 to Jose J. Delacruz, Plaintiff *pro se*, 2420 N.W. 7th Avenue, Ft. Lauderdale, Florida 33305.

By _____
CHARLES S. WHITE
Assistant United States Attorney